**Allen S. FOX, Libellant,**

v.

**THE SS MOREMACWIND, her boats, tackle, etc., in rem, and Moore-McCormack Lines, Inc., as owners, operators, etc., in personam, Respondents and Third-Party Petitioner,**

**Waterfront Ship Service Corporation, Third-Party Respondent.**

No. 7929.

United States District Court
E. D. Virginia,
Norfolk Division.

March 21, 1960.

Sidney H. Kelsey, Norfolk, Va., for libellant.

Seawell, McCoy, Winston & Dalton, Harry E. McCoy, Norfolk, Va., for respondents and third-party petitioner.

Jetts, Sykes & Coupland, Norfolk, Va., for third-party respondent.

WALTER E. HOFFMAN, District Judge.

Libellant, employed by Waterfront Ship Service Corporation, hereinafter called "Waterfront", was a member of the gang doing ship's carpentry work aboard the Moremacwind on September 10, 1957, while the vessel was anchored in the stream off the piers of the Chesapeake & Ohio Railway Company at Newport News, Virginia. At approximately 3:20 p. m., libellant, while operating a portable electric hand saw bearing the trade name Skilsaw, caught his left hand in the blade of the saw, causing him to lose three fingers of the left hand. Libellant was wearing gloves at the time.

In the final analysis the determination of this controversy rests upon a question of causal connection between an unseaworthy appliance and the resulting injury, but it is necessary to discuss the background of the case in the first instance.

Libellant alleges that the vessel was unseaworthy in that the portable electric hand saw, brought aboard the vessel by Waterfront's employees, was defective. Libellant also alleges negligence on the part of the shipowner in failing to inspect the equipment which proved to be defective. Certain exceptive allegations were filed by the respondent-owner, the hearing on which was reserved pending the presentation of all evidence. Suffice

it to say that the exceptive allegations require no discussion, with the exception of respondent's contention that the portable electric hand saw used by libellant did not take the place of equipment usually furnished and necessarily required by a ship.

The respondent has impleaded Waterfront as a third-party respondent alleging, in substance, that (1) Waterfront holds itself out to be an expert in the ship's carpentry business, (2) Waterfront agreed to provide suitable appliances and competent employees with which to do the work, and (3) Waterfront breached its implied contract to perform the work in a safe and proper manner, and hence is liable over to Moore-McCormack Lines, Inc., for any judgment which may be rendered against Moore-McCormack, plus attorney's fees and costs. For reasons hereinafter stated, we do not reach the third-party liability but, if reached, it is clear that Waterfront would be liable over to Moore-McCormack as the implied contract of indemnity undoubtedly existed.

Waterfront answered the libel and impleading petition, and likewise filed exceptive allegations relying principally upon the exceptive allegations filed by Moore-McCormack. Additionally, Waterfront has impleaded the libellant as a third-party respondent contending that libellant impliedly agreed to indemnify Waterfront for any damages for which Waterfront would be held liable to Moore-McCormack. We do not approach this latter point, which, if reached, would complete the circle of liability. We note in passing, however, that the evidence does not support any such implied contract between libellant and Waterfront, assuming that public policy permitted the ultimate liability to rest upon the party instituting the action.

On the day of the accident, the Moremacwind, in anticipation of taking on a cargo of coal, made arrangements with Waterfront, a concern engaged in the business of ship's carpentry, to board the vessel with a number of carpenters and equipment to build and install dunnage tank covers for the purpose of covering and protecting metal tank tops in the No. 2 and 5 lower holds from damage which may be done to the tank tops by clamshell buckets used in loading coal, and for the further purpose of preventing coal and dust from settling in the deep tanks. It was work customarily done in connection with the operation of the vessel and, prior to the introduction of specialists in the field, these tasks were performed by the ship's crew.

Libellant and other employees [1] went to the vessel in a launch, carrying with them certain equipment, including the portable electric hand saw, owned by Waterfront. Work was commenced in the No. 2 hold, at which time the portable saw was used primarily by an employee named Weishaupt. During the morning hours the stop-bolt on the saw broke, flew out, and struck another Waterfront employee. Weishaupt did not report the broken stop-bolt to any of the ship's officers or crew and, while libellant testified that he reported the condition of the saw to Waterfront's foreman, we think that this fact is unimportant to a decision of this case.

Following completion of the work in the No. 2 hold, the gang moved to the No. 5 hold, where the installation of tank top covers was commenced. At approximately 3:20 p. m., libellant sustained his injury while operating the portable hand saw.

In constructing these tank top covers the carpenters used dunnage found aboard the vessel. To cover the tank tops it was necessary to construct the sides and top, similar to a table but with the sides enclosed. In order to prevent a clamshell bucket from catching a side or corner of the dunnage top cover, it was necessary to saw the edges in such a

1. Waterfront contends that libellant was not employed as such because he was selected from a Union gang. There is no merit to this contention. For the purpose of this action, libellant was Waterfront's employee.

manner as to prevent any portion of the dunnage from extending beyond other parts of same.

The sides and top of the dunnage cover had been constructed and libellant was using the portable hand saw in trimming the left side of the top to make the edge of same flush with the side. He had cut approximately one-third of the trim when the blade of the saw struck a nail. He then caused the nail to be removed before proceeding further. If libellant had been in the process of beginning his cut, as contrasted with having already partially completed his cut, the absence of the stop-bolt could then have probably contributed to his unfortunate accident. At the very start of a cut the stop-bolt holds the lower blade guard in place but, as to this particular cut, it was necessary to manually retract the lower blade guard and rest the saw in a position where the guard was held back by the dunnage with the blade not touching the wood. The operator would then place his left hand on the upper saw handle, insert his right ring finger in the trigger guard, start the saw, lower the blade into the dunnage, and resume the cut along substantially the same line as before. To hold the front end of the saw down with the blade guard caught by the dunnage behind the cut, or to rest the rear of the saw on the top of the dunnage with the blade guard held back and thereafter make a "pocket cut" before continuing the straight cut, constituted the only two methods available in the operation of the saw where the cut had already been partially made. In either instance it was necessary to manually pull back the lower blade guard with the left hand so that the lip of the lower guard would rest on top of the dunnage.

■ Libellant, in endeavoring to continue the cut following the removal of the nail, used his left hand to pull back the lower blade guard. He knew, of course, that the stop-bolt had been broken earlier that day. *However, this is the identical procedure he would have been required to follow if the stop-bolt had been in operation. It follows, therefore, that the presence or absence of the stop-bolt played no part in the operation of the portable hand saw with respect to this particular cut.* Apparently libellant started the saw prematurely, thus causing the glove on his left hand to be carried forward with the blade.

Libellant insists that he was not particularly interested in making a straight cut along the line of his previous cut. We discount this statement as all of the evidence points to efforts on the part of ship's carpenters to make as straight a cut as possible for the purposes hereinabove noted.

■ Assuming arguendo that the portable hand saw was an unseaworthy appliance following the break of the stop-bolt, this fact, standing alone, does not justify a recovery. The resulting accident must be *in consequence* of the unseaworthy appliance or, stated otherwise, the injury must be *proximately caused* by the unseaworthiness. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; The Malcolm Baxter, Jr., 277 U.S. 323, 48 S.Ct. 516, 72 L.Ed. 901; Norris, The Law of Seaman, Vol. 2, p. 256, § 618.

For the purpose of considering this phase of the case, we accept libellant's theory that the portable saw was unseaworthy, and that the vessel owner is none the less liable when ship's equipment is brought aboard for the purpose of performing work traditionally done by the ship's crew. Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478, affirmed per curiam sub nom. Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798. Libellant relies upon Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, but an analysis of this decision does not obviate the necessity of establishing that the unseaworthiness was a proximate cause of the accident and resulting damages.

■ There are other contentions advanced by libellant which require but little discussion. It is argued that the upper handle of the saw was broken, but the evidence does not substantiate this claim. Prior operators of the saw on

the day in question had no recollection as to any broken handle. While libellant testified that the handle was broken, he had previously stated in discovery proceedings that the broken handle did not cause the accident. The Court finds that the handle was not broken at the time of the accident.

The final contention as to unseaworthiness of the saw is that it was not equipped with a retractor handle, a comparatively new device placed upon the lower guard by the manufacturer in 1953. While undoubtedly this recent device is an improvement over the older saw, it is essentially a convenience item. Even if we assume that the addition of the retractor handle on the lower guard would add to the safety of use, the evidence falls far short of establishing that this more modern improvement is of such a character as to require that the same be installed upon older model saws. The portable hand saw, without the retractor handle, was still reasonably safe and suitable when properly operated. That is the only duty which the law imposes upon the shipowner. Norris, The Law of Seamen, Vol. 2, p. 252, § 614; Doucette v. Vincent, 1 Cir., 194 F.2d 834, 837; The Tawmie, 5 Cir., 80 F.2d 792; Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166; The Cricket, 9 Cir., 71 F.2d 61, 63. Libellant urges that these authorities are "outdated", but he cites no cases overruling this well-established principle of law.

By reason of the conclusions reached, it does not appear necessary to consider the exceptive allegations, and particularly the application of Berryhill v. Pacific Far East Line, 9 Cir., 238 F.2d 385, wherein the injured party was using a portable grinding wheel to perform repairs on the ship's shaft keyway, which grinding tool had been brought aboard the vessel by an independent contractor. The Ninth Circuit, which had pronounced the doctrine in Petterson, refused to extend the same to the factual situation in Berryhill as the claimant was not doing the traditional work of the seamen. Here, however, the work was undoubtedly traditional work of the seaman and, while Moore-McCormack maintained no portable electric hand saws aboard the vessel, we do not believe that this is the controlling factor. Were it necessary to so determine, we would conclude that Petterson is applicable and that the obligation to provide seaworthy appliances reasonably necessary to loading and unloading operations remained with the shipowner, even though the appliance was brought aboard by an independent contractor.

There is no merit to the contention that the shipowner was negligent. Libellant insists that the ship's officers and crew were under a duty to inspect all equipment brought aboard the vessel by Waterfront, and that this remained a continuing duty during the performance of the work by Waterfront. If a shipowner is under such a duty, it would become a guarantor of the safety of all equipment brought aboard by a competent independent contractor. This concept is foreign to the ordinary principles of negligence.

Because of the difficulty presented in verbally explaining the operation of the portable hand saw as to the particular cut which confronted libellant at the time of his injury, the Court has, ex meru moto, received in evidence as exhibits the portable saw and dunnage table used during the trial of this case for the purposes of demonstration. It is a rare situation when a party is injured while operating an unseaworthy appliance, and yet is denied recovery for the reason that the unseaworthy condition did not contribute to the accident. An appellate court is entitled to the same visual demonstration as was afforded the trial court.

There remains for consideration the question as to whether Moore-McCormack is entitled to recover from Waterfront its costs, including reasonable attorney's fees. There is authority, by way of dictum or otherwise, to make such an allowance where there is a recovery by the claimant and a judgment over is rendered against the third-party im-

pleaded. American Export Lines, Inc. v. Revel, 4 Cir., 266 F.2d 82; Shannon v. United States, 2 Cir., 235 F.2d 457; A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir., 256 F.2d 227. In this case, however, no liability attaches upon Moore-McCormack and, therefore, Waterfront is not responsible for such legal fees and expenses as may have been incurred by the shipowner. As to the shipowner, it remains an expense of doing business.

Adopting this memorandum in lieu of specific findings of fact and conclusions of law pursuant to General Admiralty Rule 46½, 28 U.S.C.A., proctors for respondent will prepare and present an appropriate decree.