**Herbert J. BIELAWSKI, Plaintiff,**

v.

**AMERICAN EXPORT LINES, Defendant and Third-Party Plaintiff,**

v.

**NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION, Third-Party Defendant.**

**Civ. A. No. 3641.**

United States District Court
E. D. Virginia,
Norfolk Division.
July 29, 1963.

Francis N. Crenshaw, Norfolk, Va., for plaintiff.

Harry E. McCoy, Jr., Norfolk, Va., for defendant and third-party plaintiff.

L. S. Parsons, Jr., Norfolk, Va., for third-party defendant.

WALTER E. HOFFMAN, Chief Judge.

The remaining issue for determination in this case is the perplexing problem of attorney's fees, expenses, etc., incurred by the defendant, American Export Lines, now sought to be recovered from Norfolk Shipbuilding & Drydock Corporation under the rapidly expanding theory of indemnification.

This action was instituted by an employee of Norfolk Shipbuilding & Drydock Corporation, hereinafter referred to as the shipyard, against American Export Lines, the owner *pro hac vice* of the vessel known as the SS EXMOUTH, to recover for his serious personal injuries, medical and hospital expense, as a result of the alleged unseaworthiness of the vessel and alleged negligence of American Export Lines. The accident occurred on January 31, 1961. The vessel had been taken to the shipyard plant a few days prior thereto, it being the intention of American Export Lines to cause the deactivation of the vessel in order that it could be returned to the United States as a member of the "dead fleet" in the James River. Invitations for bids on the work of deactivating the vessel were extended to bidders on January 26. A bid was made by the shipyard on January 30, 1961, and verbally accepted at 4:30 P.M. that day. Actually in the interim period following the vessel's arrival at the shipyard, work had been done by the shipyard toward deac-

tivation. Clause 7 of the invitation for bids contains the following language:

"The contractors time and liability to commence immediately upon the acceptance of the vessel at his berth and to cease when all work is completed and he has removed all his equipment, tools and appliances and all dirt, etc., from the vessel and handed over ready for towing to the layed up fleet."

On the morning of January 31, with the vessel docked at the shipyard's Pier 3, the plaintiff (employee of the shipyard) was working on the ship's forward mast house when he was struck in the back and catapulted into the vessel's No. 2 hold. All of the work being performed at the time was pursuant to orders of the shipyard in accordance with the contract to completely deactivate the vessel. While the jury, to whom the case was submitted, did not reach the point of determination as to whether the vessel had been removed or withdrawn from navigation at the time of the accident, it is clear from the record that it was in fact a dead ship at that moment.

The shipyard, as plaintiff's employer, paid the medical expense and compensation benefits in accordance with the Virginia Workmen's Compensation Act, same amounting to $4945.63. This fact was not brought out in the trial, but is a matter of record.

Prior to the institution of this action, accepting the statement of counsel for American Export Lines, an inquiry was propounded to the shipyard as to whether the shipyard would afford any protection, indemnity, or otherwise hold harmless, for the claim of plaintiff. The shipyard declined. After process was served upon American Export Lines the shipyard was brought in as a third-party defendant, the third-party complaint seeking indemnification, attorney's fees, expenses, etc.

At the trial special interrogatories were propounded to the jury with the results as noted.

"1. If the Norfolk Shipbuilding & Drydock Corp., its agents or employees were negligent in the handling of the boom, was such negligence, without regard to unseaworthiness, the sole proximate cause of the plaintiff's accident?

"Yes  [ x ]      No  [  ]

"(If question 1 is answered in the affirmative, the jury shall *not* answer any further questions. Otherwise the jury must answer the remaining questions except as indicated.)

"2. Had the SS EXMOUTH been removed or withdrawn from navigation at the time of plaintiff's accident on January 31, 1961?

"Yes  [  ]      No  [  ]

"(If your answer to question 2 is in the affirmative, you shall *not* answer questions 3 and 4.)

"3. Was the work which was being done by plaintiff at the time of his accident the type of work traditionally done by seamen?

"Yes  [  ]      No  [  ]

"(If your answer to question 3 is in the negative, you shall *not* answer question 4.)

"4. Was the SS EXMOUTH seaworthy as defined in the Court's charge, at the time of the plaintiff's accident?

"Yes  [  ]      No  [  ]

"(If your answer to question 4 is in the affirmative, you shall *not* answer question 5.)

"5. If the SS EXMOUTH was unseaworthy, did such unseaworthiness proximately cause or contribute to the plaintiff's accident?

"Yes  [  ]      No  [  ]

"6. Was the defendant, American Export Lines, its agents or employees negligent at the time of plaintiff's accident?

"Yes  [  ]      No  [  ]

"(If your answer to question 6 is in the negative, you shall *not* answer question 7.)

"7. If the defendant, American Export Lines, was negligent, did such negligence proximately cause or contribute to the plaintiff's accident?

"Yes [ ]    No [ ]

"8. If you conclude that the plaintiff is entitled to recovery, what amount is he entitled to receive irrespective of any contributory negligence?

"$————

"9. Was the plaintiff himself guilty of any negligence which proximately caused or contributed to his accident?

"Yes [ ]    No [ ]

"10. If plaintiff was guilty of any contributory negligence, in what percentage or proportion did his negligence proximately cause or contribute to his accident?

————%"

From the foregoing it will be noted that the negligence of the shipyard's agents or employees constituted the *sole* proximate cause of plaintiff's accident. Such a conclusion foreclosed the necessity of ascertaining (1) whether the vessel had been removed or withdrawn from navigation at the time of the accident, (2) whether the work being done by plaintiff at the time of the accident was the type of work traditionally done by seamen, (3) whether the vessel was seaworthy and (4) whether American Export Lines was negligent.

The claim of the shipowner against the shipyard is predicated upon the breach of implied warranty to perform its deactivation services in a safe and workmanlike manner. The shipowner contends that the jury verdict has determined this breach. The Court acknowledges that the jury verdict is correct, and that the sole proximate cause of the accident and resulting injuries was the negligence of plaintiff's co-employee.

This Court has previously passed upon this question, as applied to an injury to a longshoreman, in Hill v. American President Lines, Ltd., E.D.Va., 194 F.Supp. 885, where the longshoreman was unsuccessful and the shipowner sought the recovery of attorney's fees and expenses from the expert stevedore. The point was also discussed in Fox v. The S. S. MOREMACWIND, E.D.Va., 182 F.Supp. 7, affirmed without discussion of the issue now presented, 4 Cir., 285 F.2d 222, likewise involving one who traditionally performs the work of a seaman. These decisions have been criticized.[1]

More recently this circuit has had occasion to review a related question. Rederi A/B Dalen v. Maher, 4 Cir., 303 F.2d 565. In that case, after the evidence had been concluded, the transcript prepared, and the case ready for final argument, the stevedore settled directly with proctor representing the deceased longshoreman. There is language in this opinion which strongly intimates that Hill v. American President Line, Ltd. and Fox v. The S.S. Moremacwind were incorrectly decided to the extent that an adjudication of liability is a basic prerequisite to the shipowner's claim of indemnity. As stated by Chief Judge Sobeloff (303 F.2d 567):

"If a shipowner can show that the stevedore's breach of warranty has occasioned it expense, reimbursement is due. Of course, the shipowner must prove that the stevedore, in fact, breached its warranty and caused injury for which the shipowner was potentially liable and that the expenses incurred in defense are reasonable."

While the cited case does not mention the prior decisions in Hill and Fox, the quoted words are sufficient to convince this Court that, as to the matter of attorney's fees and expenses, the Hill and Fox cases were incorrectly decided.

Following Rederi A/B Dalen v. Maher, supra, the Fourth Circuit Court of Appeals again examined the question in

1. Caswell v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V. v. Strachan Shipping Company, S.D.Tex., 205 F.Supp. 295.

American Export Lines v. Atlantic & Gulf Stevedores, 313 F.2d 414, cert. den., 83 S.Ct. 1525. In that case the jury had found for the injured longshoreman in an action against the shipowner, a proceeding to which the stevedore was not made a party although notified of the pending litigation and invited to take over the defense. In a subsequent action for indemnity, including attorney's fees and expenses, the shipowner sued the stevedore. The district judge, hearing the matter without a jury, concluded that the jury finding and judgment in the prior case was not binding upon the stevedore, and that the sole proximate cause of the accident was the negligence of the stevedore's winch operators. In reversing, the court of appeals said:

"A jury had determined Export's liability to Harper, and Export having paid the judgment, it was entitled to raise in a separate action the entirely distinct question whether the existing risk of injury as found by the jury was brought into play by the stevedore's failure to perform its contracted services with reasonable safety. * * * The shipowner was bound only to show that the stevedore's breach of warranty occasioned its expense * * * absent conduct on its own part sufficient to preclude recovery."

Tested by these principles it is abundantly clear that the third-party plaintiff, American Export Lines, is entitled to recover counsel fees and expenses stipulated to be $5560.36. The shipyard owed the same warranty of workmanlike services to the shipowner as the stevedore owes in loading or unloading cargo. The warranty having been breached by the negligence of the shipyard's employees, the expense of the defense of the employee's action against the shipowner has been incurred. Even though the employee's action was unsuccessful, the "potential" liability was present. The shipyard argues that the word "potential" must be construed as "foreseeable." If such an interpretation of the word "potential" was intended, it is for

the court of appeals to so indicate. Paliaga v. Luckenback Steamship Co. v. Turner & Blanchard, Inc., 2 Cir., 301 F.2d 403; Damanti v. A/S Inger, 2 Cir., 314 F.2d 395, cert. applied for May 16, 1963, sub nom. Daniels & Kennedy, Inc. v. A/S Inger.

Deactivation of a vessel for the purpose of placing her in the dead fleet is work which is clearly not the traditional work of a seaman. The warranty of seaworthiness does not exist under such circumstances, nor when the vessel is undergoing major repairs. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; Noel v. Isbrandtsen Co., 4 Cir., 287 F.2d 783; Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed. 2d 1; Berge v. National Bulk Carriers Corp., 2 Cir., 251 F.2d 717, cert. den. 356 U.S. 958, 78 S.Ct. 994, 2 L.Ed.2d 1066; Raidy v. United States, 153 F.Supp. 777, aff. 4 Cir., 252 F.2d 117, cert. den. 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147.

Counsel for the shipowner concedes that no authority has been discovered as to the warranty, if any, owed by a shipyard to a shipowner when the vessel is undergoing major repairs, structural changes, or extensive deactivation processes. However, contrary to the contention of the shipyard, the right to indemnity is not confined to the admiralty field or to the issue of seaworthiness of a vessel. In General Electric Company v. Moretz, 4 Cir., 270 F.2d 780, rehearing den. 272 F.2d 624, cert. den. Mason & Dixon Lines, Inc. v. General Elec. Co., 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545, the analogy between the longshoremen-shipowner-stevedore cases was applied to an action by a truck driver, employed by the third-party defendant, against the shipper, General Electric Company, for injuries sustained when a trailer, loaded negligently by the shipper, overturned while being hauled by the plaintiff. Indemnity was awarded to General Electric against plaintiff's employer, Mason & Dixon Lines. In subsequent litigation attorney's fees and expenses were recovered in part. General

Electric Co. v. Mason & Dixon Lines, Inc., D.C., 186 F.Supp. 761.

The landmark case is, of course, Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. There is language in this opinion and the footnotes which can be urged as authority for both the shipowner and shipyard in this case. For example, in footnote 6 the court says:

"We do not reach the issue of the exclusionary effect of the Compensation Act upon a right of action of a shipowner under comparable circumstances without reliance upon an indemnity or service agreement of a stevedoring contractor."

The inference from the foregoing is that an indemnity agreement is enforceable only against a stevedoring contractor, but this is refuted by the holding in General Electric Co. v. Moretz, supra. Moreover, Ryan states (350 U.S. 133, 134, 76 S.Ct. 237):

"It is petitioner's [the stevedore's] warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service."

This statement plainly indicates that there is an obligation which extends beyond the admiralty field.

The impact of this decision will pass to third parties, protected through compensation acts from direct suits by their own employees, the responsibility for attorney's fees and expenses incurred by defendants sued by employees, even though the actions may be frivolous, provided, of course, that the employer has breached a warranty, express or implied. As Chief Judge Sobeloff said, as quoted above, if there be a breach of warranty which caused an injury for which the shipowner is *potentially* liable, reimbursement must follow. The word "potential" is defined as "existing in possibility, not in actuality; possible or in the making, as opposed to actual or realized."

The authorities in dead ship cases pointedly suggest that it is an *issue of fact* as to whether a ship has been withdrawn from navigation at the time of the injury. Roper v. United States, supra. The same principle is applicable in determining whether the injured party was performing work traditionally done by seamen. Questions of unseaworthiness and negligence are universally held to be factual issues. Indeed, in an action by one injured aboard a vessel, whether in or out of navigation, it is difficult to conceive of any situation wherein there would not be some *potential* liability upon the shipowner if the injured party was engaged in the performance of any work connected with the vessel. From a review of the facts of this case, while it appears to be purely an industrial accident, it certainly cannot be contended that there was no *potential* liability upon the shipowner.

The shipyard, charged with the contractual obligation of deactivating the vessel, impliedly warranted to perform the work in a reasonably safe manner to the end that the shipowner would not suffer any loss or damage thereby. This warranty was breached when plaintiff was injured through the negligence of the shipyard, its agents or employees. The subsequent loss of damage to the shipowner occurred when the action was brought and the shipowner was required to incur expenses and attorney's fees to defend the action. The jury verdict finding that the shipyard, its agents or employees, were negligent in the handling of the boom and that such negligence was the sole proximate cause of the accident was patently correct.

Counsel for the shipowner will prepare a judgment order in accordance with this memorandum.