Mrs. Barbara Lynn Whitley SINGER, widow of Lester Karl Singer, Jr., Individually and as Administratrix of the Succession of Lester Karl Singer, Jr., and as Next Friend of the Minor, Karl David Singer

v.

Louis R. DORR, d/b/a Dorr Towing Company, Dorr Towing Co., Inc., Federal Barge Lines, Inc., Port City Barge Lines, Inc.

Civ. A. No. 14421.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 16, 1967.

Charles Kohlmeyer, Jr., Thomas W. Thorne, Jr., Lemle & Kelleher, New Orleans, La., for Federal Barge Lines, Inc. and Port City Barge Lines, Inc.

Patrick L. Burke, James A. George, Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for Dorr Towing Co., Inc. and Stuyvesant Ins. Co.

HEEBE, District Judge:

This matter raises interesting and novel questions concerning the existence, nature, and extent of the implied warranty of workmanlike service which may be owed by a tug owner to a barge owner. The proceedings out of which those issues now arise were, insofar as is relevant to an understanding and determination of those issues, as follows:

Lester Singer was employed by Dorr Towing, Inc., as a deckhand on Dorr's tug, the "Big Louie II." Port City Barge Lines, Inc., was the owner of the barge PCBL–104, which was leased to Federal Barge Lines. Dorr contracted with Federal to tow the barge from the American Sugar Refinery to Federal's fleet area. On the night of September 23, 1963, the "Big Louie II" had the PCBL–104 in tow, when Singer fell from either the barge or the tug into the Mississippi River and drowned. Singer's widow and child brought a wrongful death claim in negligence under the Jones Act, 46 U.S.C.A. § 688, against Dorr Towing[1] and its insurer and an action in negligence and unseaworthiness[2] under the state wrongful

---

[1] Plaintiff's allegations of unseaworthiness against Dorr Towing were dismissed, the exclusive remedy against the employer sounding in negligence, Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

[2] The state wrongful death provisions have been held to create a cause of action in unseaworthiness as well as negligence, Grigsby v. Coastal Marine Service of Texas, Inc., 235 F.Supp. 97, 106–108 (W.D.La.1964). The United States Supreme Court has apparently accepted *sub silentio* the correctness of *Grigsby*: Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed. 2d 488 (May 8, 1967), wherein the Court held that a longshoreman's unseaworthiness claim against the shipowner-employer, Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), could be asserted in *in personam* as well as *in rem* actions, was a death case and the

death provisions, Louisiana Civil Code Art. 2315, against the barge interests. The barge interests brought a cross claim [3] against the tug owner, alleging that there was implied in the towage contract an obligation of the tug owner to perform his services in a reasonable and workmanlike manner, and that that obligation had been breached. The barge interests asked for indemnity from the tug owner for all damages for which they were held, together with costs, disbursements and attorneys' fees; further, if the barge interests were not held liable to the plaintiff, they sought recovery of their costs, disbursements and attorneys' fees from Dorr. Dorr responded by filing a cross claim against the barge interests based on the alleged obligation implied by the towage contract that the barge interests furnish a seaworthy barge and the breach of that obligation. A jury trial was sought on all claims except the cross claim of the barge interests.

■ The trial lasted six days.[4] After the presentation of plaintiff's evidence, the trial judge granted a directed verdict in favor of the defendant barge interests against the plaintiff, and after the presentation of defendant Dorr's evidence, the Court likewise granted a directed verdict in favor of the barge interests on the cross claim of Dorr— although there had been evidence presented upon which the jury could have based a finding that the barge was unseaworthy, there was no evidence to

only available theory of recovery was unseaworthiness. Since there is no action for wrongful death known to the maritime law in the absence of a statute, it is necessary to recovery in *Jackson* that the Louisiana wrongful death statute be deemed to include a cause of action in unseaworthiness.

3. Dorr Towing and the barge interests were all named as defendants, thus any claims between them are properly denominated cross claims, Rule 13(g), F.R. Civ.P. However, because of our use herein of the *Ryan* analogy, p. 935 infra, for convenience we will often refer to the cross claim of the barge interests against Dorr as though it were a third-party claim, with the barge interests classified as defendant and third-party plaintiff and Dorr as third-party defendant, Rule 14 (a), F.R.Civ.P.

4. It might have lasted longer, but since the amount of the claim asserted did not exceed the amount of insurance coverage, the trial judge had ordered, Singer v. Dorr, 38 F.R.D. 167 (E.D.La.1965), that the trial of the tug owner's limitation defense, 46 U.S.C.A. § 183, be severed; as expected, that issue became moot when judgment was entered for less than the policy limits. That order was a procedural result of the trial judge's previous holding, in In the Matter of Independent Towing Co., Inc., (ITCO), 242 F.Supp. 950 (E.D.La.1965), that the right of a vessel owner to limit liability was a personal defense not available to the owner's insurers sued pursuant to the Louisiana Direct Action Statute, LSA–Rev. Stat. 22:655. Assuming the validity of that holding, with which we are in complete agreement, a court will be faced with the problem of reconciling a plaintiff's desire to proceed with his direct action against the insurance policy with the vessel owner's right to have the limitation fund protected by insurance so as not to lose both his vessel and insurance, all the while attempting to effect judicial economy. It was the trial judge's, and is our, view that rather than enjoining the filing or prosecution of direct actions pending the determination of the limitation proceedings, the direct actions should proceed—in most cases the amount of the judgments awarded will not exceed the policy limits, there will be no need to try the limitation issue, the owner's right to limitation will in no way have been impaired, and the plaintiff will not have been unnecessarily delayed in his pursuit of justice. If the judgments do exceed policy limits, then, prior to execution on the judgments, the limitation issue would be tried, but the shipowner or the limitation fund would be credited with the judgment recovered in the direct actions. If, for some reason, any of the direct action claims cannot be consolidated with the limitation proceeding, the limitation court would, if necessary, be able to enjoin execution on any judgments recovered in, or at any prior time enjoin proceedings in, the unconsolidated direct actions. That this approach is consistent with the Supreme Court's pronouncements in Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), see the opinion of the trial judge herein in Alcoa Steamship Co. v. Charles Ferran & Co., 251 F.Supp. 823

support a finding that any such unseaworthiness had been the proximate cause of Singer's death.[5] See Reasons, document #93 of Record.

At the conclusion of all the evidence, the case was submitted to the jury on written interrogatories. The jury found that Dorr Towing was proximately negligent and awarded damages of $70,000.00 plus funeral expenses to the plaintiff, to be reduced 50% for the decedent's proximate contributory negligence. Judgment was thereafter entered on the jury verdict in favor of the plaintiff against defendant Dorr; on the directed verdict in favor of the defendant barge interests against the plaintiff; and on the directed verdict in favor of the barge interests against Dorr on Dorr's cross claim. However, judgment was further entered to the effect that the cross claim of the barge interests against Dorr was moot. Plaintiff then moved for judgment n. o. v. or for a new trial; whereupon Dorr moved, solely in the event plaintiff's motion was granted, to set aside the directed verdict against it, and grant a new trial, on its cross claim against the barge interests. The barge interests moved to strike that portion of the judgment which found that the cross claim of the barge interests against Dorr was moot, and further moved that the Court render a separate finding that Dorr breached its warranty of workmanlike service and enter a separate judgment thereon, awarding the barge interests their attorneys' fees and costs as against Dorr.

Prior to the hearing of any of these motions, the trial judge, our predecessor, Judge Ellis, retired. Later, the plaintiff and Dorr settled their differences, and a satisfaction of judgment was entered. The remaining motion—that of the barge interests to amend the judgment—was brought on for hearing before us. It is, of course, clear that the cross claim of the barge interests against Dorr is not moot, in that it specifically sought costs and attorneys' fees in the event the barge interests were not held liable to plaintiff. Therefore, that portion of the judgment must be · stricken. We must now decide whether an implied warranty of workmanlike service in the performance of the towage contract is owed by tugs to barges and, if so, the nature and extent of that warranty, and the remedy for its breach; and lastly, if the law would allow a remedy in the posture of this case, whether the warranty was in fact breached under the facts of this case.

We can find no cases on the question of an award of costs and attorneys' fees to a barge at the expense of a tug. However, our study of the jurisprudence in related areas leads us to the inescapable conclusion that costs and attorneys' fees may properly be awarded. First, and most important, there *is* an implied warranty of workmanlike service, that is, an implied obligation to tow properly and safely, owed by a tug to a barge—the very nature of the towing agreement necessarily implies an obligation to tow properly and safely, and competency and safety are essential elements of the towing service undertaken. James McWilliams · Blue Line v. Esso Standard Oil Co., 245 F.2d 84 (2nd Cir. 1957); Dunbar v. Henry Dubois' Sons Co., 275 F.2d 304 (2nd Cir. 1960), cert. den. 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46 (1960). Next,

(E.D.La.1966). We believe this approach, rather than an ironclad rule of "no direct actions before limitation" is not only reconcilable with *Cushing* but provides a useful alternative procedural device which nonetheless protects all the substantive interests the Supreme Court desired to protect and which the Fifth Circuit in Guillot v. Cenac Towing Co.,

366 F.2d 898 (5th Cir. 1966), saw need to protect, at 904, without the imposition of unnecessary delays upon plaintiff and without the loss of time brought about by the trial of the limitation issue which will so often become moot.

5. It may, however, have been the proximate cause of suit being brought against the barge interests.

given the existence of this warranty, we can see absolutely no reason for its scope and the measure of its breach being determined by theories conceptually different from those applied to the warranty of workmanlike performance owed by a stevedore to a shipowner. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Both the barge owner and *Ryan* shipowner turn their vessels over to the complete control of another party (tug owner or stevedore) but nonetheless remain absolutely liable for the condition of their vessels under the non-delegable duty to provide a seaworthy vessel. Thus, assuming the initial seaworthiness of the vessel when control is transferred by the owner, the owner's liability to third persons can depend entirely on the actions of the party to whom control is transferred and who is under the implied obligation of workmanlike service.

▪ The stevedore who breaches his warranty, causing the shipowner to be held liable to an injured longshoreman, must indemnify the shipowner for the damages recovered by the longshoreman. *Ryan,* supra. Subsequent to *Ryan,* it was held that this indemnity includes not only the damages recovered by the plaintiff, but also the attorneys' fees incurred by the shipowner in attempting to defend against the plaintiff's claim. See cases cited in Drago v. A/S Inger, 194 F.Supp. 398, 409–410 (E.D.N.Y. 1961). The next development in this area of the law was the allowance of recovery of attorneys' fees where the shipowner successfully defends against the plaintiff's claim—if the stevedore breached its warranty, then it is liable for all damages caused by that breach, including attorneys' fees expended in defending unsuccessful claims which were brought as a result of that breach. Cas-

well v. Koninklyke Nederlandsche Stoomboot Maalschappy, 205 F.Supp. 295 (S.D.Tex.1962), "clear and logical opinion" concurred in and affirmed, sub. nom. Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, 324 F.2d 746 (5th Cir. 1963), cert. den. (3 votes for cert.) 376 U.S. 954, 84 S.Ct. 969, 11 L.Ed.2d 972 (1964), reh. den. 377 U.S. 925, 84 S.Ct. 1219, 12 L.Ed.2d 217 (1964), cited and followed, Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2nd Cir. 1964), cert. den. 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964). For a time this was not the rule in the Eastern District of Virginia, Fox v. SS Moremacwind, 182 F.Supp. 7 (1960); Hill v. American President Lines, Ltd., 194 F.Supp. 885 (1961), but the author of those opinions later stated them to be incorrectly decided, Bielawski v. American Export Lines, 220 F.Supp. 265 (1963) and his change of heart was affirmed, sub. nom. American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525 (4th Cir. 1964).[6]

It appears that none of the tug-barge cases involved attorneys' fees or a successfully defended main claim. However, we can see no reason why, if the implied warranty exists, it should not cover attorneys' fees even where the main claim is successfully defended, just as it does in the shipowner-stevedore cases.[7] The theories behind the indemnity are the same in both cases, and the line-up of the parties almost precisely parallel. In both cases, an injured plaintiff sues a vessel owner who third-parties the person in control of the vessel (the implied obligor). In both cases, the vessel owner is under the nondelegable duty to provide a seaworthy vessel and thus any breach of the implied obligation can result in an action against the "innocent" vessel owner. There is one difference: in the

---

6. *Fox* and *Bielawski* involved shiprepairers rather than stevedores; see footnote 7, infra.

7. The reasoning of the shipowner-stevedore cases has also been followed in ship-

owner-shiprepairer situations, Booth Steamship Co. v. Meier & Oelhaf Co., 262 F.2d 310 (2nd Cir. 1958); Bielawski v. American Export Lines, supra, text accompanying footnote 6.

shipowner-stevedore cases, the only permissible action by the injured plaintiff is against the shipowner—the stevedore is protected, at least initially, against any liability other than that provided by the Longshoremen's and Harbor Workers' Compensation Act. Thus, it is certain that an action will be filed against the vessel-owner. However, in the tug-barge situation, the tug owner enjoys no such protection; he may be sued directly by the injured person (indeed, here, he was sued and was cast in judgment), and thus there is no certainty, since there is no necessity, that the injured person will sue the barge owner. If we believed that the *Ryan* doctrine of implied contractual indemnity was a fiction created solely to help "innocent" shipowners in situations where there is a certainty and necessity that they be sued, since no other suable defendant exists, and where there is no other way to escape the effects of the *Halcyon* doctrine of no contribution between joint tortfeasors, Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), then we might reject a theory of implied contractual indemnity, or at least some of its ramifications, as between tugs and barges, since there is no certainty or necessity that the barge be sued. However, we do not believe that the *Ryan* doctrine rests on such a flimsy base, but rather is founded soundly on an attempt to equitably place the burden of defending and paying claims on the one party of the two who was in control of the vessel and whose action resulted in the claim being brought[8] rather than on the party technically liable. Viewed in this light, we hold that all the ramifications of the *Ryan* doctrine, as discussed above, are applicable to the tug-barge situation, despite the ability of the plaintiff to sue the tug owner directly.

■ In the case before us, the barge interests are faced with the assertion of the tug owner that there can be no recovery of attorneys' fees unless the party seeking indemnity tenders the defense of the main claim to the indemnitor. Although it is true that in many of the shipowner-stevedore cases, including *Caswell (Strachan)*, supra, the shipowner does tender the defense, we cannot see that the tender is critical. In Massa v. C. A. Venezuelan Navigacion, supra, 332 F.2d 779, the Second Circuit, in adopting the Fifth Circuit's *Strachan* doctrine awarding attorneys' fees to the successful-defendant shipowner, does not mention in its opinion tendering the defense, and the rationale of the opinion does not indicate that tender might be critical. It may well be, of course, that if the third-party defendant offers to defend against the plaintiff's claim, and that offer is rejected by the defendant, there can be no recovery of attorneys' fees, since the expense could have been avoided at no cost to the original defendant in those circumstances. See Rederi A/B Dalen v. Maher, 303 F.2d 565, 567 n. 3 (4th Cir. 1962). But the third-party defendant should not be allowed to oppose the claim against him and then later be heard to imply that he would have accepted the defense to plaintiff's claim had it been tendered—for the third-party defendant to assume the defense, it would have to admit, for purposes of the third-party claim, its liability to defendant.[9] Thus, rather than insist on

8. The barge interests' indemnity claim might be weakened to the extent the finding suggested by footnote 5, supra, might be made. See Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). But see Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Calmar Steamship Corp. v. Nacirema Op-

erating Co., 266 F.2d 79 (4th Cir. 1959); D/S Ove Skou v. Hebert, 365 F.2d 341, 348 (5th Cir. 1966).

9. In this regard, we must, although agreeing with the result, disagree with the comment of the court in David Crystal, Inc. v. Cunard Steamship Co., Ltd., 339 F.2d 295, 300 (2nd Cir. 1964), that the defendant's "only safe course was to defend against" the plaintiff's claims where

a formal tender of the defense, we think it fair to consider the third-party claim and request for attorneys' fees as an implied invitation to the third-party defendant to admit its liability on the third-party claim and to offer to defend against the plaintiff's claim, and conclude that the third-party claim, in and of itself, without a formal tender of the defense, is sufficient action by the defendant to permit its recovery of attorneys' fees. Expressed differently, the burden is on the third-party defendant to offer to defend (or to accept a tender of the defense if made) in order to avoid imposition of liability for attorneys' fees, and not on the defendant to tender the defense in order to recover attorneys' fees. Here, not only was there no offer to defend, but Dorr also actively pursued its own cross claim against the barge interests.

We thus conclude that costs and attorneys' fees will be proper in this case if the implied warranty was breached.[10] Here, however, the reservation of that issue to the trial judge, and his retirement prior to a decision thereon, presents an unfortunate problem. In order to save time and expense, we would like to decide this issue at this time, but we are unable to. Here, the difference between this case and the shipowner-stevedore cases, that is, the fact that here the third-party defendant may be sued directly by the plaintiff, discussed supra at p. 936, comes into play. In the *Ryan* cases, the issue of the breach of the implied warranty may only be determined in the third-party claim, as that is the only claim involving the stevedore. Here, the third-party defendant is also involved in a separate main claim, and it appears, on the surface at least, that the decision of that main claim might decide the issue of the breach of warranty, because under the facts of this case, it may well be that a finding that Dorr's negligence caused Singer's death would automatically demand a finding that the implied warranty was breached. However, it is our reluctant conclusion that we cannot act upon the jury finding of Dorr's negligence. That finding was made in connection with the main claim, which was submitted to the jury. The barge's claim against the tug, a cross claim, was reserved to the judge, and it was contemplated that the judge would determine the issues presented by that claim. We feel that we cannot regard the jury verdict as binding upon us or determinative of the breach of warranty issue for the reason that it would not have been binding upon or determinative of the issue before Judge Ellis. First, the find-

---

the third-party defendant invoked personal defenses against the defendant (third-party plaintiff). That statement implies that if the third-party defendant were to offer to assume the defense, there are instances in which the defendant might have to reject that offer in order to adequately protect himself. This cannot be—the defendant loses nothing when the third-party defendant assumes the defense for, in effect, the third-party defendant thereby admits, just as between himself and the third-party plaintiff, the validity of the impleading claim and that his defenses to it are nonmeritorious, and takes full responsibility for the plaintiff's claim; of course, this "admission" has no effect and is of no assistance or evidentiary value to the plaintiff in his action. Thus, the assumption of the defense by the third-party defendant is a far safer course for a defendant.

10. It should be pointed out that there can be recovery of only those costs and attorneys' fees incurred in defending against the plaintiff's claim, not those incurred in pursuing the claim for indemnity, and, in this case, not those incurred in defending against Dorr's cross claim—the general rule in indemnity cases is that the right of recovery includes the amount of the judgment against the indemnitee, interest on the judgment, attorneys' fees, costs and expenses, for all these are elements of damages, Holley v. The Manfred Stansfield, 186 F.Supp. 805, 811 (E.D.Va. 1960), but it is also the general rule that the cost of enforcing a legal right (here the contractual right of indemnity) is borne by the right holder, not by the party sought to be held. Caswell v. Koninklyke Nederlandsche Stoomboot Maalschappy, supra, 205 F.Supp. 295 (S.D.Tex.1962). See also Lusich v. Bloomfield Steamship Co., 355 F.2d 770, 776 (5th Cir. 1966).

ing of Dorr's negligence made by one trier of fact in resolving plaintiff's claim against Dorr, does not compel a finding of Dorr's negligence by a different trier of fact in resolving the barge's claim against Dorr, even though the evidence is the same. Even though the evidence might have been sufficient to warrant sending the case to the jury on the main claim, and therefore no directed verdict or judgment n. o. v. would be possible, and the jury finding that Dorr's negligence caused Singer's death would stand, it is still possible that the judge, in weighing the evidence to decide the breach of warranty issue, might have come to the conclusion that there should be no recovery by the barge interests, because he could have found, contrary to the jury, that Singer's death was not caused by Dorr's negligence. In the ordinary case, where there is no overlapping of claims or issues, the only action he could take because of disagreement with the jury verdict, would be to grant a new trial. However, here his disagreement with the jury verdict could validly be reflected in his decision of the issue that was reserved to him. Apart from that, even if he had agreed with the jury, he still might have disallowed recovery, if he found the conduct of the barge interests sufficient to preclude recovery, see footnote 8, supra; or if (if such a hypothetical is possible) Dorr's negligence was not related to the towing contract and was thus not a breach of the warranty.

Although the procedure seems wasteful in view of the finding by the jury, it is our opinion that there are no principles embodied in the doctrines of res judicata and collateral estoppel that would enable us to decide this issue by using the jury verdict as a jumping-off point.[11] Accordingly, the only solution, short of a new trial, is that a stenographic transcript of those portions of the trial revelant to this issue be prepared. Upon submission of that transcript to the Court, together with appropriate memoranda and arguments, the Court will be able to decide that issue.

11. The complex arrangement of claims among the three parties in this suit must be distinguished from the simple three-party *Ryan* cases. In the *Ryan* cases, if the shipowner is held in judgment by the longshoreman and then pursues his right of indemnity against the stevedore, the stevedore is not permitted to relitigate the question of the shipowner's liability to the longshoreman, for the stevedore's liability is to indemnify the shipowner for damages sustained as a result of a breach of warranty. American Export Lines v. Atlantic & Gulf Stevedores, 313 F.2d 414 (4th Cir. 1963). If the shipowner settles with the longshoreman, the stevedore can, beyond denying that the warranty was breached, inquire only into the reasonableness of the settlement. Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); California Stevedore & Ballast Co. v. Pan-Atlantic Steamship Corp., 291 F.2d 252 (9th Cir. 1961). [If the stevedore settles with the longshoreman, and the shipowner pursues his indemnity claim for attorneys' fees, then the shipowner must show that a breach of warranty caused injury for which the shipowner was potentially liable. Paliaga v. Luckenbach Steamship Co., 301 F.2d 403 (2nd Cir. 1962); Rederi A/B Dalen v. Maher, 303 F.2d 565, 566–67 (4th Cir. 1962).] These rules hold that the indemnitor cannot relitigate in the indemnity action the liability of the indemnitee, which is determined independently of the indemnitor; in the matter before us, however, the jury verdict for plaintiff against Dorr touches on the liability of the indemnitor, and thus our concern is whether the indemnitor should be estopped from "relitigating" between himself and the indemnitee issues which were determined between himself and the plaintiff, not whether he can relitigate the indemnitee's liability.