**FIRST MISSISSIPPI CORPORATION, Plaintiff,**

v.

**FIELDER TOWING CO., INC., et al., Defendants.**

**No. GC 75–57–S.**

United States District Court, N. D. Mississippi, Greenville Division.

Dec. 10, 1976.

James L. Robertson, Campbell & DeLong, Greenville, Miss., John B. Gooch, Jr., Montgomery, Barnett, Brown & Read, New Orleans, La., for plaintiff.

Frank Thackston, Jr., Lake, Tindall, Hunger & Thackston, Ernest Lane, III, Swank, Lane & Associates, Greenville, Miss., William G. Beanland, Brunini, Everett, Beanland & Wheeless, Vicksburg, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court on the claim of Warfield Towing Service, Inc. (Warfield) to be indemnified by Fielder Towing Company (Fielder) for its costs and expenses of defense herein.

The material facts are not in dispute. Plaintiff, First Mississippi Corporation (First Mississippi) sued Warfield, Fielder and Greenville River Services, Inc. (Greenville) to recover for a cargo loss said to have been occasioned by the unseaworthiness of the M/V Jennifer Cummins (owned by Fielder) and/or her tow and/or the negligence of defendants Fielder, Warfield and Greenville. First Mississippi owned a certain cargo of urea loaded into its Barge EBI–126 at Donaldsonville, Louisiana, and arranged for transportation of the barge and cargo by defendants to a point on the Mississippi River at or near Friars Point, Mississippi. During the transportation process, First Mississippi alleges that the cargo was subjected to extensive water damage.

At the trial of the case, Greenville and Warfield successfully defended the claim of First Mississippi and were discharged from liability in regard thereto. Fielder remains as the only defendant.

Warfield claims indemnity from Fielder for the costs and expense of its defense by virtue of a contractual relationship which existed between them concerning the opera-

tion and management of the M/V Jennifer Cummins. Warfield contends that the *Ryan*[1] doctrine is applicable to the contract between the parties and creates an obligation on the part of Fielder to indemnify it for its costs and expense incurred in defense of the action.

Fielder and Warfield entered into an agreement, which is evidenced by a letter written by Warfield on May 30, 1973, whereby Warfield agreed to manage the boats of Fielder. Warfield proposed to provide (1) sales, (2) scheduling and dispatching, (3) hiring and supervision of personnel, (4) billing, and (5) other necessary management functions. Fielder, on the other hand, agreed to (1) furnish grocery and supply orders for the boats, (2) attend to repair of the vessels when in the area of Van Buren, Arkansas (Fielder's home base), (3) assist Warfield in the Van Buren area with recruitment of personnel and crew changes, (4) correlate its functions with that of Warfield, and (5) pay all payrolls, fuel and supply bills, and other direct operational costs. Warfield assumed payment of management costs. Fielder agreed to pay Warfield for its services an amount equal to 7 percent of the gross revenue from the boats and, in addition, 10 percent of the net operating profit. The contract has been variously referred to as a "brokerage", "management", or "booking" agreement. It is silent as to the liabilities, if any, which may flow from the operation of the boats. The agreement does not contain any exculpatory or indemnifying language.

Warfield's claim for indemnity, if any it has, must be based on the *Ryan* doctrine. The pertinent question presented to the court in *Ryan* was "whether in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo." 350 U.S. at 132, 76 S.Ct. at 236–37. The court answered the question in the affirmative. The court reasoned that the stevedore was charged with the duty of workmanlike performance which necessarily imposed upon it not only the duty to stow the cargo (pulp rolls) but to stow it properly and safely. This warranty was an integral part of the stevedore's contract with the shipowner and a breach thereof made the stevedore liable to the shipowner for any loss occasioned thereby.

The right of indemnity created by *Ryan* had its genesis in the stevedoring contract and the obligation of the stevedore to perform the work in a workmanlike manner. While there is ample authority to sustain Fielder's contention that the *Ryan* doctrine is applicable only to incidents which arise in the context of the stevedore—shipowner relationship, the doctrine has been applied in other situations. *Singer v. Dorr,* 272 F.Supp. 931 (E.D.La.1967); *Trans-Amazonica Iquitos, S. A. v. Georgia Steamship Co.,* 335 F.Supp. 935 (S.D.Ga.1971); *D/S Ove Skou v. Hebert,* 365 F.2d 341 (5th Cir. 1966).

The undisputed facts in the action sub judice do not support a finding that Fielder has breached any duty, expressed or implied, which it was obligated to perform. The main thrust of First Mississippi's claim is the negligent manner in which the M/V Jennifer Cummins transported the barge in question. The court cannot find any contractual obligation expressed or implied on the part of Fielder to safely operate the M/V Jennifer Cummins. There is a charge of unseaworthiness as to the tug but this was virtually abandoned at trial. Here again, however, the contract between Fielder and Warfield cannot be construed so as to create any obligation, expressed or implied, on Fielder's part to supply a seaworthy vessel. Fielder had no obligation to Warfield to supply a seaworthy boat.

The court finds that Warfield must fail in its claim of indemnity against Fielder for its costs and expense in defending the suit.

An appropriate order is being entered.

---

1. *Ryan Stevedoring Co. v. Pan-Atlantic SS Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).