United States Court of Appeals,

Fifth Circuit.

No. 93-3612.

SEA-LAND SERVICE, INC. Plaintiff-Appellee

v.

CRESCENT TOWING & SALVAGE COMPANY, INC., etc., et al., Defendants,

Crescent Towing & Salvage Company, Inc., f/k/a Harbor & Tideland's Towing Corporation, Defendant-Appellant.

Jan. 24, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, SMITH, Circuit Judge, and HAIK,[1] District Judge.

HAIK, District Judge:

Crescent Towing & Salvage Company, Inc. (Crescent) appeals the district court's finding of fault and the award of attorneys fees. For the reasons discussed below, we affirm on the issues of fault and reverse the award of attorneys fees.

I.

STANDARD OF REVIEW

Crescent advocates de novo as the appropriate standard of review. Crescent argues that a de novo standard should apply where factual findings are based on mainly documentary evidence. Crescent cites *Bose Corp. v. Consumers Union of the United States,*

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

*Inc.*[2] *Bose* is inappropriate because it involves first amendment litigation in which the appellate court has an obligation to make an independent examination of the entire record. Crescent's position is not supported by the controlling rule,[3] which provides that "[F]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...."

## II.

## BACKGROUND

Crescent owned and operated the tug BETTY SMITH. Sea-Land Service, Inc. (Sea-Land) owned and operated the M/V SEA LAND EXPEDITION, an oceangoing container vessel. On July 30, 1989, Miguel Acevedo, a sternmate aboard the SEA LAND, was injured during an unberthing maneuver.

At the time of the accident, the SEA LAND was docked at the France Road Wharf. Two tugs, the BETTY SMITH at the stern and the PORT ALLEN at the bow, were standing-by, until needed to assist the SEA LAND in a turnaround.

The SEA LAND's sternmates, Juan Toro, Pedro Torres and Acevedo were singling up the shorelines. The stern was secured using three wires and two lines. When all lines were released except one springline, Acevedo indicated to Thirdmate Sink that the line was taut. Sink does not speak Spanish and Acevedo does not speak English. Sink indicated to Acevedo to continue.

After Acevedo removed two wraps of the line off the bitt, the

_____

[2]*466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).*

[3]Fed.R.Civ.P. 52(a).

2

line jumped the bitt, striking Acevedo in both wrists, breaking his forearms.[4]

Acevedo sued Sea-Land in Puerto Rico. Sea-Land settled for $125,000, then filed suit for indemnification against Crescent. The trial court found Crescent at fault for prematurely pulling on the towline. Sea-Land was also assessed with fault for failure to intercede when Acevedo indicated that there was a hazardous situation.

The bench trial resulted in judgment in favor of Sea-Land for $94,228.16. The allocation of fault was sixty-five percent to Crescent and thirty-five percent to Sea-Land. Damages included (among other items) $15,728.00 attorney fees for the defense against Acevedo's claims in the Puerto Rico suit.

Crescent now appeals the allocation of fault and the award of attorneys fees. We affirm the allocation of fault and reverse the award of attorneys fees.

III.

SUFFICIENCY OF EVIDENCE

Crescent appeals the finding of the trial court that Crescent breached its duty of workerlike performance and its duty to exercise reasonable maritime skill. Crescent alternatively claims Sea-Land should have been assessed a greater degree of fault.

In support of its position on appeal, Crescent identifies indicators of Sea-Land fault as follows: The SEA LAND crew was

---

[4]As a result of his injuries, Acevedo underwent two surgeries, one on each hand, to repair carpal tunnel syndrome.

3

working fast because of a delay;  the stern was understaffed;  SEA LAND crew members knew the taut springline was unsafe;  the SEA LAND crew did nothing to prevent the accident;  the language barrier prevented clear communication of the problem to the pilot.

Crescent makes the argument that a tug cannot maintain a "belly" in the hawser line at all times.  A twin screw tug, such as the BETTY SMITH, must periodically engage alternating engines to maintain a steady position in the water.  Crescent argues that a finding of fault based primarily on evidence of a taut hawser places an unrealistic burden on tugboats.

This argument is well taken.

However, during an unberthing procedure, it is especially important that a tug maintain a belly in the hawser line.  This is important to prevent precisely the type of accident which occurred in this case.

Captain Johnson testified[5] that the tug should not have propeller wash while the ship is undocking.  He testified that the tug should have been in neutral gear at the time of the accident.  He went further to say that if the tug were not in a neutral gear and there was propeller wash, then the tug acted without orders from the ship's pilot.

In the instant case there was ample evidence to support the finding that the tug pulled away prematurely and without orders from the pilot.  Thirdmate Sink's observation of propeller wash and Captain Johnson's testimony combine to give a clear indication that

_____

[5]Page 159 et seq. of Exhibit One of the trial exhibits.

4

Crescent was at fault.

Thirdmate Sink's observations immediately after the accident were given considerable weight in evaluating the cause of the accident. He saw smoke from the springline, propeller wash from the tug, and an unusually taut hawser line between the tug and ship. In fact, Sink said the hawser was "straight out". This indicates more than just a temporary loss of the "belly" in the towline. The trial judge found this persuasive proof that the tug pulled away prematurely, placing a strain on the springline and thereby creating a dangerous situation. A tug can be liable to a seaman aboard the vessel being towed where the seaman is injured due to the tug's premature attempt to tow the vessel.[6]

The trial court stated in its reasons that Crescent would have been held completely responsible for Acevedo's injuries but for the actions or failure to act on the part of Thirdmate Sink, and/or Pilot Johnson.

A finding of fact is clearly erroneous only if our review of the entire record impels the definite and firm conviction that a mistake has been committed.[7] No such mistake was made in this case.

## IV.

### ATTORNEYS FEES

Crescent contends that there is no basis for including

---

[6]*Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421 (5th Cir.1988), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

[7]*Sullivan v. Rowan Cos.*, 952 F.2d 141, 147 (5th Cir.1992).

attorney fees (incurred in the Puerto Rico suit between Sea-Land and Acevedo) as an item of damages; Crescent urges that each party should bear its own attorney fees. Crescent was not named in the first suit and was not informed of that suit until after the settlement. Crescent also contends that since Sea-Land and Crescent were adverse, Sea-Land would have incurred the attorney fees anyway.

Sea-Land contends that since Crescent breached the warranty of workerlike performance, attorney fees are a recoverable item. Sea-Land cites *Singer v. Dorr*[8] and *Stevens v. East-West Towing*[9] in support.

The facts presented in both cases are different from the facts presented here. Indemnification was awarded in both *Singer* and *Stevens.* Indemnification was not awarded and is not appropriate in this case because both Crescent and Sea-Land were found to be at fault. When the warranty of workerlike performance is breached, a co-tortfeasor (Sea-Land in this case) is not shielded from a claim for contribution. And where contribution is appropriate, an award of attorneys fees is not.

Sea-Land contends that the holding in *Odd Bergs Tankrederi A/S v. S/T Gulfspray*[10] has no effect on this case because Sea-Land is not claiming recovery under a contribution theory. Sea-Land seeks recovery under an indemnification theory for breach of warranty of

---

[8]272 F.Supp. 931 (E.D.La.1967).

[9]649 F.2d 1104 (5th Cir.1981).

[10]650 F.2d 652, 655 (5th Cir.1981).

workerlike performance.

It is uncontroverted that Sea-Land was partially at fault for the injuries suffered by Acevedo. Sea-Land does not appeal the thirty-five percent allocation of fault. While the trial court found that there was a breach of the warranty of workerlike performance, Sea-Land is not entitled to full indemnity. Sea-Land's partial fault precludes full indemnification. That is, Sea-Land is entitled to a contribution (or partial indemnity) from Crescent and no more.

Attorneys fees, under the facts of this case, are not a recoverable element of damages. While attorneys fees may be an appropriate item for damages when a vessel is vicariously liable for the acts of a tug, it may not be awarded when proportionate fault and contribution are applied.

*Odd Bergs* holds that attorneys fees and legal costs incurred by a defending co-tortfeasor are not recoverable by way of contribution from other parties who are liable. That rule is clear and directly on point in this case.

V.

CONCLUSION

For the above stated reasons, we AFFIRM the judgment of the trial court in part and REVERSE and RENDER the judgment in so far as it awards attorneys fees.

7