The **UNITED STATES** of America,
Plaintiff-Appellee,

v.

**1160.96 ACRES OF LAND, MORE OR LESS, Situate IN HOLMES COUNTY, STATE OF MISSISSIPPI and Mrs. Florence B. Fisackerly, C. K. Fisackerly, Jr. and Mrs. Grace Fisackerly, Defendants-Appellants-Landowner.**

No. 28232.

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1970.

Robert Hauberg, U. S. Atty., Jackson, Miss., Shiro Kashiwa, Asst. Atty. Gen., S. Billingsley Hill, Charles N. Woodruff, Attys., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

John M. Grower, William Timothy Jones, Jackson, Miss., for defendants-appellants; John Sharp Holmes, Holmes & Cortright, Yazoo City, Miss., Brunini, Everett, Grantham & Quin, Jackson, Miss., of counsel.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

As in most eminent domain cases, the controversy here is more principal than principle. The legal issue is the propriety of a Court ordered remittitur as a condition to denial of the Government's motion for new trial. We hold the remittitur to have been improper and reverse and remand.

On March 14, 1968 the United States Government filed a Declaration of Taking on 1160 acres of Defendants' land in the Mississippi Delta[1] to be used as a floodway for the Yazoo Basin Headwater Project. The Secretary of the Army

---

1. This comprised all of the Delta cropland of Defendants' tract. The Hill land of about 400 acres was not taken.

deposited $277,700 into the registry of the Court, an amount the Government considered to be fair compensation. In April, 1968, landowners asked that a jury be impounded to hear the issue of damages. In March, 1969, a jury returned a verdict of $513,400.[2] The Government filed a motion for new trial, which expressly contained an alternative prayer for a remittitur to $294,200, and in April, 1969, the Court granted the trial unless Defendants consented to a remittitur of $38,400 which would reduce the compensation to $475,000. In May Defendants filed the remittitur under protest, reserving the right to cross-appeal should the Government appeal. On July 1 the Government filed notice of appeal, and on July 2, landowners filed their notice of cross-appeal. By June 2, the Government had deposited the full amount of the judgment (after remittitur) plus interest from the date of filing of the Declaration ($492,976) which the landowners withdrew July 8. The appeal was dismissed by the Clerk of the Court on October 31 because the Government had failed to file a brief. As an afterthought, the Government filed a motion to dismiss the appeal on November 3.

Though all of the appraisers agreed that the best use of the property was for agricultural production, as might be anticipated, the estimates of reasonable compensation for the taking varied with the person who was asked. The landowners' experts gave opinions ranging from $512,400 to $582,000. The Government's experts attempted to put the figure in the neighborhood of $290,000.

The disparity was primarily based on the question of whether the tract had been floodland before the Hillside Floodway Levee (First Phase) had been completed in 1965. The land was taken as part of a floodway and the Government's contention was that the levee did not cause more flooding than had always taken place prior to 1965. Defendants however asserted that no flooding had occurred before, and that the floodland was due to the Government, and not to the geography.[3] The jury by its verdict apparently took the landowners' witnesses to be the more credible.[4]

Before we delve into the propriety of the Court-ordered remittitur, we face the threshold contention that since the landowners have accepted the fruits of the judgment by receiving the reduced amount, they have therefore waived the right to attack the remittitur. The Government relies strongly on Woodworth v. Chesbrough, 1917, 244 U.S. 79, 37 S.Ct. 583, 61 L.Ed. 1005. There Plaintiff brought an action against bank directors whose malfeasance allegedly had caused him injury. The trial Judge found the verdict excessive and conditioned the denial of a new trial on a remittitur. After filing the remittitur, Plaintiff appealed. The Supreme Court held that it would be inequitable for one to accept a judgment and then seek to "retract the condition on which it was granted". 244 U.S. at 82, 37 S.Ct. at 584, 61 L.Ed. at 1007. We echoed this in Movible Offshore Co. v. Ousley, 5 Cir., 1965, 346 F.2d 870, 875.

" 'The plaintiff, by not insisting on the alternative allowed him by the

---

2. An additional $1,980, not on appeal here, was awarded for ad valorem taxes in the portion of the tax year after the taking.

3. A witness for the Government illustrated this divergence of opinion. He testified that had the property not been subject to flooding before the taking, he would have valued the property at least $100 an acre higher.

4. In particular we may surmise that the jury used as a guide for damages the appraisal of Leland Speakes, Jr., a witness for the landowners, since the verdict is only $1,000 higher than his estimate. Mr. Speakes put the value of the Delta land before taking at $400 per acre. And in a similar case decided in June, 1969, United States v. 2457.85 Acres of Land (opinion unreported) the trial Judge in a non-jury proceeding found the value of the Delta land on the tract adjoining the defendants' on the west to be $390 an acre.

912

court, of having a new trial of the whole case, but electing the other alternative allowed, of filing a remittitur of half the amount of the original judgment, and thereupon moving for and obtaining an affirmance of that judgment as to the other half, waived all right to object to the order of the court, of the benefit of which he had availed himself.' Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41, 52, 15 S.Ct. 751, 756, 38 L.Ed. 889 (1895), and cases cited. See also Woodworth v. Chesborough, 244 U.S. 79, 37 S.Ct. 583, 61 L.Ed. 1005 (1917)."

But *Woodworth* implies that the judgment creditor has a real choice between taking a sure sum and putting the case to another trial and that the only detriment suffered is the risk that on the conditionally ordered retrial, the recovery will be even less than the reduced amount of the remittitur.

In a number of recent cases we have held that acquiescence in the remittitur as a condition to avoid a certain retrial does not amount to a waiver of the right to appeal and the subject of the appeal may be the remittitur itself. In Delta Engineering Co. v. Scott, 5 Cir., 1963, 322 F.2d 11, the plaintiff accepted the remittitur conditionally to enable him to appeal the validity of the remittitur which the partially successful plaintiff had protested at every stage. In allowing the appeal over the same contention urged by the Government here we had this to say:

"It would be a strange rule that would keep a plaintiff from challenging the legal correctness of any action having such portentous consequences."

322 F.2d at 15.

We spelled it out in our holding in Steinberg v. Indemnity Insurance Co., 5 Cir., 1966, 364 F.2d 266:

"By her appeal plaintiff seeks to set aside the order of remittitur and reinstate the verdict awarding her $49,-000. In Delta Engineering Corp. v. Scott, supra, we assumed without deciding that until such time as plaintiff actually has obtained the fruits of a judgment he or she is free to challenge the legal correctness of the Court-enforced remittitur. In the case here presented we are faced with that issue squarely, and we hold that plaintiff here, who was refused an appeal on the interlocutory order of remittitur and who has consented to entry of the reduced judgment only conditionally, as a means to facilitate this appeal, has suffered a sufficiently adverse adjudication to allow an appeal."

364 F.2d at 268.

So the right to maintain the appeal turns on whether the remittitur is accepted without protest, as we pointed out in Minerals and Chemicals Phillip Corp. v. Milwhite, 5 Cir., 1969, 414 F.2d 428, 431:

"There remains the issue of appellee's cross-appeal. It is established that appellee accepted the remittitur. This Court made it unequivocally clear in Movible Offshore Company v. Ousley, [5 Cir.,] 346 F.2d 870 (1965) that once a remittitur has been accepted it may not later be appealed unless the acceptance was made under protest. No element of protest is present in the acceptance in this case."

There was nothing free about this acceptance of the remitted amount. First, the Fifth Amendment assures a citizen of just compensation. The citizen is the pursued, not the pursuer. He is entitled either to his property or to just compensation. The landowners had been deprived of the use of their property for one year when the trial began. And then, after being put to a trial which resulted in an award of $197,000 more than the Government's initial deposit, the Government filed its notice of appeal which landowners were entitled to treat as a good faith intention on the part of the sovereign to contest even the reduced judgment as excessive. Not until the Government had completely failed to comply with the most rudimentary rules of this Court, a failure that resulted in

the dismissal for want of prosecution (and the belated motion of the Government to dismiss the appeal) could anyone—landowner or otherwise—divine the purpose of the Government. No one would seriously question that had the appeal been prosecuted with a reversal in favor of the Government that the landowners would have been subject to an action for recoupment on equitable principles of assumpsit, money had and received or the like.[5] Unless landowners would have performed a highly unlikely feat by profligately spending nearly a half million dollars, their receiving the money made them little more than temporary stakeholders.

■ More than that, unless the funds were withdrawn from the registry, the landowners would have lost all interest during the time of the Government's appeal or their cross appeal since interest ceases on making the deposit.[6] See Bishop v. United States, 5 Cir., 1961, 288 F.2d 525, 527. Thus, adopting the Government's contention would have meant that to maintain the attack on the validity of the remittitur the landowners would have had to (i) continue to lose the use of the property and (ii) also the use of the funds in lieu of the property. This would hardly square with the Fifth Amendment.

■ On the merits the decision can be quickly stated. The remittitur was erroneous because it was based on an incorrect legal standard. Whatever doubt there might have been before, this Court has now adopted the rule which limits reduction to the highest amount which the jury could have found.[7]

In Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir., 1970, 429 F.2d 1033, we chose the maximum recovery rule.[8] We had this to say:

"* * * [W]e agree with Gorsalitz's over-all attack that the court committed an error of law in failing to apply the proper test of excessiveness, which we hold was the maximum which the jury could reasonably find. We agree with the view expressed in 3 Barron & Holtzoff, Federal Practice & Procedure (Wright ed.) § 1305.1, p. 376:

'There are some differences of opinion as to the standard by which the court should be guided in determining the amount of the remittitur. One theory is that an excessive verdict should be reduced to the minimum amount which the jury might have awarded, since award of any greater sum deprives the defendant of his right to a jury trial.[9] Other courts have felt free to reduce the verdict, by remittitur, to that amount which the court itself considers the jury should have allowed. A final theory is that the jury by its excessive verdict intended to award the maximum and defendant

---

5. In fact the order of disbursement was expressly "subject to the rights of the United States to recover from * * * landowner defendants, * * * any amount by which the judgment in this cause may be reduced on appeal * * *."

6. Interest at 6% on the reduced judgment would have been $28,500 per year, almost the equivalent of the remittitur. More than a year has elapsed since the judgment and the Government's abortive appeal.

7. Conflicts and confusion have been the hallmark of cases deciding how low a remittitur can go. In Dimick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, the Supreme Court justified the remittitur doctrine as not being an invasion

of the jury's realm but rather merely an exercise in "lopping off an excrescence" of the verdict. But the Court never defined how much equaled "an excrescence", and the lower Courts have devised different tests to define it.

8. This holding was presaged by the District Court opinion of Judge Rubin in Glazer v. Glazer, E.D.La., 1968, 278 F.Supp. 476, the rationale of which we adopted. See also Curtis Publishing Co. v. Butts, 5 Cir., 1965, 351 F.2d 702, 718–719, aff'd, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094.

9. This Court rejected the "minimum recovery" rule in International Paper Co. v. Busby, 5 Cir., 1950, 182 F.2d 790.

cannot complain of any judgment within the permissible limits. This theory permits reduction only to the highest amount which the jury could properly have awarded. It is the only theory which has any reasonable claim of being consistent with the Seventh Amendment.'" [Footnotes omitted.]

With this standard in mind, we have made a careful examination of this record. Granted that the jury was not bound to accept the dollar opinion figures given by the experts (even though verbally uncontradicted) there was ample credible evidence, both fact and opinion, to justify the jury figure of $513,400. The jury was entitled to credit the figures given by landowners' witnesses as more convincing than those lower ones of the Government's witnesses.[10] The verdict was but $1,000 more than the landowners' lowest figure of $512,400. Therefore we find that the remittitur entered below was improper.

But it does not end with a simple reversal and rendition for the full amount of the jury verdict. For the remittitur was a condition to not granting the motion for new trial which the Judge's order found to be "well taken". On the surface the order seems to state that if (i) the remittitur is not accepted or,

perhaps (ii) is held to be invalid then a new trial would be granted. But Judges are practical, and we would not hold the trial Judge to such literalism. In all good faith with an abundance of precedent to support the now rejected legal standard for fixing the remittitur the District Court was undoubtedly confident that there would never be a new trial since either the landowners would accept the remittitur or the appellate Court would sustain it under an attack going only to the Judge's discretion (and the claimed abuse of it). The Government is entitled to have this issue determined on its merits now that the conditional order has been held invalid.[11]

This is especially so since there is a decisive difference between the granting of an instructed verdict (or J.N.O.V.), which the "maximum" rule simulates and the grant of a new trial by the trial Judge. He may grant an instructed verdict only where as a matter of law the evidence is insufficient to sustain the claim, issue or defense. See Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365 (en banc). But even if the Judge finds that the evidence passes muster he has wide discretion in granting a new trial which is almost beyond effective review and probably only after

10. The trial Judge's fixing of the remittitur is unilluminating as to basis.

11. There is some analogy to F.R.Civ.P. 50(c) (1) and (d):
"(c) * * *
(1) If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise

ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court."
F.R.Civ.P. 50(c) (1).
"(d) If the motion for judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this rule precludes it from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted."
F.R.Civ.P. 50(d).

the second trial.[12] We have long stressed this sharp distinction in the role of the trial Judge:

> "A motion for new trial is addressed to the trial Judge's discretion. He may grant a new trial if he thinks he has committed error; and he may grant one (and he alone can) because he thinks the verdict is wrong, though supported by some evidence. The exercise of his discretion is not ordinarily reviewable on appeal, though a failure to exercise discretion, or an abuse of it, may be corrected."

Marsh v. Illinois Central Railroad Co., 5 Cir., 1949, 175 F.2d 498, 500. See also Whiteman v. Pitrie, 5 Cir., 1955, 220 F. 2d 914; Telfair v. Zim Israel Navigation Co., Ltd., 5 Cir., 1970, 428 F.2d 127; Brown v. Louisiana & Arkansas Ry. Co., 5 Cir., 1970, 429 F.2d 1265.

Thus the trial Judge might readily determine that a new trial should be had even though a Judgment N.O.V. could not be ordered. *See* Hampton v. Magnolia Towing Co., 5 Cir., 1964, 338 F.2d 303; Planters Manufacturing Co. v. Protection Mutual Insurance Co., 5 Cir., 1967, 380 F.2d 869, 881, cert. denied, 389 U.S. 930, 88 S.Ct. 293, 19 L. Ed.2d 282; United States v. Bucon Construction Co., 5 Cir., 1970, 430 F.2d 420. Although we should not force a new trial by literalism, neither should we deprive the Government of its right to have a square ruling on the motion for new trial. The case has changed with *Gorsalitz* now controlling.[13] Seeing that we hold the evidence sufficient to sustain the jury verdict, and aware that he no longer has a discretion to pick a lesser figure which he deems "fairer", the Judge may well decide that the case has been well decided. Therefore this case must be remanded for the Court below to decide whether a new trial should be granted. If he decides yes then his decision is only reviewable after the new trial. If he decides no then judgment will be entered on the jury verdict, and that will be the end of it.

Reversed and remanded.

---

12. At common law the grant of a new trial was never reviewable. In the history of legal development a reversal for "abuse of discretion" is a relatively recent innovation. See Miller v. Maryland Casualty Co., 1930, 2 Cir., 40 F.2d 463.

Though "abuse of discretion" is admittedly a slippery concept, we have attempted a definition as being "a seriously erroneous result" and a "miscarriage of justice". Whiteman v. Pitrie, *infra* 220 F. 2d at 919.

13. Although the circumstances are quite different we ordered remand in *Gorsalitz* for the trial Court to determine in the first instance just what the "maximum" jury verdict would have been.